UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
BORIS KUCHER, ALME MANAGEMENT, INC., and
BMK CONSULTING,

                    Plaintiffs,

       -against-

ALTERNATIVE TREATMENT CENTER OF
PATERSON, LLC, ALTERNATIVE TREATMENT
CENTER OF NEWARK, LLC, BUSINESS SUPPORT
SOLUTIONS, BASIC FOUNDATION, NATAN
POLISHUK, EFREM MILNER, NIKOLAY KOMIN,
ALEKSANDR AIZEN, WALTER SCHECTER, and
BARGAIN ISLAND CHECK CASHING,

                    Defendants.
------------------------------------------------------------------X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ SEP 1 2006 ★
P.M. _____
TIME A.M. _____

05 CV 3733 (SJ)

**MEMORANDUM
AND ORDER**

A P P E A R A N C E S:

LIFSHUTZ & LIFSHUTZ, PC
675 Third Avenue
24th Floor
New York, NY 10017
By:    Marvin Lifshutz, Esq.
        Bruce S. Rosenberg, Esq.
Attorneys for Plaintiffs

JACQUES G. SIMON, ESQ.
488 Madison Avenue #1100
New York, NY 10022
Attorney for Defendant Nikolay Komin


JOHNSON, Senior District Judge:

      Plaintiffs Boris Kucher ("Kucher"), Alme Management ("Alme"), and BMK

1

Consulting, Inc. ("BMK") (collectively, the "Plaintiffs") brought suit against three groups of defendants, all of which are alleged to be part of a common scheme to defraud Plaintiffs. The first group includes Alternative Treatment Center of Paterson, LLC, Alternative Treatment Center of Newark, LLC, Business Support Solutions, and Basic Foundation (collectively, the "Treatment Centers"). The second group includes Natan Polishuk, Efrem Milner, Walter Schecter, Aleksandr Aizen, and Nikolay Komin ("Komin") (collectively, the "Owners"). The final group includes only one member, Bargain Island Check Cashing ("Bargain Island" and, together with the Treatment Centers and the Owners, the "Defendants"). Plaintiffs brought the following causes of action: (1) violation of 18 U.S.C. § 1962(c), (2) violation of 18 U.S.C. § 1962(d), (3) common law fraud, and (4) unjust enrichment.

Defendant Komin filed a motion to dismiss pursuant to Rules 12(b)(1), (3) and (6) of the Federal Rules of Civil Procedure. For the reasons stated herein, Komin's motion to dismiss is GRANTED.

## FACTUAL BACKGROUND

Defendants allegedly obtained $300,000 from Plaintiffs through a supposedly fraudulent scheme involving the sale of the Treatment Centers, which Plaintiffs contend are sham businesses said to be devoted to the medical testing and treatment of HIV and AIDS. (Compl. ¶¶ 1-2.) Defendants' alleged scheme involved the Owners representing that they would sell their ownership interests in the Treatment Centers to Plaintiffs.

2

(Compl. ¶ 8.) Plaintiffs contend that the Owners provided business records showing that the Treatment Centers either were close to fully operational, or were fully operational and profitable, apparently even more profitable than their competitors, because of the ability to obtain medicines below market price. (Compl. ¶¶ 9-13.) Plaintiffs made payments to the Owners in consideration for ownership in the Treatment Centers, and those payments were cashed through Bargain Island. (Compl. ¶ 15.) Upon Plaintiffs learning that the businesses were shams and thereafter seeking a refund, the Owners then feigned attempts to repay Plaintiffs' investment by issuing checks with insufficient funds. (Compl. ¶ 16.) Subsequently, the Owners promised to return Plaintiffs' money if Plaintiffs found a new buyer for other sham businesses for sale by Defendants in furtherance of the alleged scheme. (Compl. ¶¶ 17-18.) If a new sale were made, the Owners would keep half of the money and give the other half to the previous purchaser/finder, such as Plaintiffs, as consideration for the original failed investment. (Compl. ¶ 19.)

Plaintiffs filed the complaint in this action on August 5, 2005, with claims arising under civil RICO, as well as common law fraud and unjust enrichment (the "State Claims"). On December 15, 2005, Komin filed a motion to dismiss (the "Motion") pursuant to Rules 12(b)(1), (3) and (6) of the Federal Rules of Civil Procedure, asserting the following: (1) this Court is an "improper venue" because of a preexisting related action in New Jersey; (2) Plaintiffs failed to meet the particularity requirements for pleading RICO fraud claims; and (3) if the federal RICO claims were dismissed, this

3

Court would not have subject matter jurisdiction over the remaining State Claims.

## JURISDICTION

As an initial matter, Komin argues that because this action is based on the same core facts as an action already commenced in New Jersey Superior Court (the "New Jersey Case"), Plaintiffs' claims are not properly before this Court and should instead be brought as counterclaims in the New Jersey Case. While the New Jersey court has the power to adjudicate federal civil RICO claims, this Court also has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331, which states in relevant part that "district courts shall have original jurisdiction of all civil actions arising under the . . . laws . . . of the United States." When federal and state courts have concurrent jurisdiction over a claim, "[a] district court may decline to exercise its jurisdiction in 'exceptional circumstances'. . . ." Bethlehem Contracting Co. v. Lehrer/McGovern, Inc., 800 F.2d 325, 327 (2d Cir. 1986) (citing Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)).

In determining whether exceptional circumstances exist, the Court must consider six factors: "(1) assumption of state jurisdiction over a res; (2) inconvenience of the federal forum; (3) avoidance of piecemeal litigation; (4) order in which the state and federal actions were filed;" (5) whether state or federal law supplies the rule of decision; and (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction. De Cisernos v. Younger, 871 F.2d 305, 307 (2d

4

Cir. 1989).

It is clear Komin has not established the existence of "exceptional circumstances" that would require this Court to decline to exercise jurisdiction. The weight of the six factor test is heavily on the side of this Court's exercise of jurisdiction. Thus, this Court will recognize its "virtually unflagging obligation" to do so. Colorado River, 424 U.S. at 817.

## DISCUSSION

### I. Failure to State a Claim

"A district court should grant a motion to dismiss a RICO claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations . . . . In applying this standard, the Court must read the facts alleged in the complaint in the light most favorable to [Plaintiffs]." McLaughlin v. Anderson, 962 F.2d 187, 190 (2d Cir. 1992) (citations and quotation marks omitted).

#### A. The 18 U.S.C. § 1962(c) Claim

While Plaintiffs do not include a specific statutory citation in their first cause of action, the language contained in Plaintiffs' first cause of action suggests that

5

P-049

Defendants violated 18 U.S.C. § 1962(c).[1] In order for Plaintiffs to succeed on an 18 U.S.C. § 1962(c) claim, Plaintiffs must establish the following: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering activity (5) directly or indirectly invests in, or participates in (6) an enterprise (7) the activities of which affect interstate or foreign commerce." Davis Lee Pharmacy, Inc., v. Manhattan Cent. Capital, 327 F. Supp. 2d 159, 163 (E.D.N.Y. 2004) (citations and quotation marks omitted). Plaintiffs allege that Defendants constitute an association-in-fact enterprise, and that Defendants' racketeering activity consists of "repeated violations of the federal mail fraud statute, 18 U.S.C. [§] 1341, based upon the use of the United States mails to negotiate Plaintiffs' checks, to supply fraudulent business records and bad checks."[2] (Compl. ¶ 41.)

When a plaintiff alleges fraud, the complaint must be pled with particularity in accordance with Rule 9(b) of the Federal Rules of Civil Procedure. The complaint must "(1) specify the statements that plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993) (citation omitted). Additionally, "[w]here multiple defendants are asked to

---

[1] "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

[2] Racketeering activity includes mail and wire fraud. See 18 U.S.C. § 1961(1).

6

respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987) (citation omitted). With regard to mail fraud specifically, "conclusory allegations that do not specify which defendants used mail or wire services, what was transmitted, when it was transmitted, or to whom it was sent are insufficient." Andreo v. Friedlander, Gaines, Cohen, Rosenthal, & Rosenberg, 651 F. Supp. 877, 882 (D. Conn. 1986) (citations omitted).

Here, Plaintiffs allege that Defendants fraudulently represented that they owned and would sell legal interests in the Treatment Centers to Plaintiffs. However, the complaint does not allege specifically who made the alleged misrepresentations. Additionally, the complaint does not allege specifically the times at which any alleged misrepresentations were made. In an apparent attempt to satisfy the pleading requirements and illustrate Defendants' fraudulent representations, Plaintiffs have annexed numerous exhibits to the complaint in support of their RICO claims. However, these exhibits serve more to confuse than enlighten.

First, Exhibit A is submitted in an attempt to demonstrate that the Owners represented that the Treatment Centers were functional and operational, or that they would be functional or operational in a short period of time. (Compl. ¶ 10.) Exhibit A consists of a quarterly tax return, wage reports, bank statements and a list of patient names. However, there is no allegation that these specific representations were fraudulent, let alone any explanation as to how they were fraudulent. Further, there is

7

P-049

no attempt to identify the person who made these representations or the time at which these representations were made.

Next, Plaintiffs point to Exhibit B to demonstrate that Defendants represented that the Treatment Centers were profitable or would become profitable in a short period of time. (Compl. ¶ 11.) Exhibit B consists of different faxed communications regarding the Owners' lease and property insurance, originating from Owners' attorney Bill Fenstemaker, Esq. and sent to Efrem Milner, "Alternate Medical [sic]" and Maria Tsitsiragos, Esq. There is no clear connection between any of these communications and any representations of profitability. In addition, Exhibit B contains what appears to be random selections from patient charts, none of which illustrates any representation of profitability. Furthermore, none of these communications identifies any specific speaker or any specific time at which any representation of profitability was supposedly made.

Third, Plaintiffs state that Exhibit C demonstrates that the Owners represented that, because the Owners could obtain medicines below market price, the Treatment Centers were more profitable than other businesses providing the same services. (Compl. ¶ 12.) The contents of Exhibit C include a Medicaid Remittance Statement and more apparently random patient chart selections. There is nothing in Exhibit C that suggests a representation of profitability or the ability to obtain medicines below market price.

Fourth, Exhibit D is provided to demonstrate that the Owners provided business

8

P-049

records to support their representations of the businesses. (Compl. ¶ 13.) Exhibit D includes a business registration application, both Internal Revenue Service and New Jersey State tax returns, an accounting services agreement, and a commercial lease agreement. However, there is no specification as to which of these items is fraudulent, how it is fraudulent, who made any fraudulent representations, and when any fraudulent representation was made.

Fifth, Exhibit E is submitted to illustrate that the Owners would knowingly issue checks with insufficient funds representing that they would return Plaintiffs' investment money. (Compl. ¶ 16.) Exhibit E consists of bank statements and check scans (many of which are unreadable) showing that, in 2005, Alternative Treatment issued checks to Plaintiff Kucher for which there were insufficient funds, and also showing that, in 2004, Alme and BMK had issued checks to Alternative Treatment. This is Plaintiffs' strongest piece of evidence, but the complaint does not allege who signed the checks, who delivered the checks, or how they were delivered. Nor does Exhibit E cure the other material deficiencies noted elsewhere in this opinion.

Lastly, Exhibit F is submitted to illustrate that the Owners closed their sham businesses and opened others in furtherance of their scheme. (Compl. ¶ 17.) Exhibit F contains two eviction notices for nonpayment of rent from two different business locations: one communication from Alternative Treatment's Newark, New Jersey landlord threatening eviction for unpaid rent; and one communication from Alternative Treatment's Paterson landlord beginning the eviction process. However, the Exhibit

P-049

does not at all demonstrate that the Owners were opening other businesses; it simply demonstrates that Alternative Treatment was closing its Newark, New Jersey and Paterson, New Jersey businesses for failure to pay rent.

Further, Plaintiffs make no specific allegations with regard to Komin and his role in the alleged fraudulent scheme. In fact, Plaintiffs fail to make any specific allegations with regard to any Defendant's specific role in the fraudulent scheme. Plaintiffs' allegations are far from meeting the pleading requirements for fraud under Rule 9(b). Moreover, the RICO predicate acts of mail fraud are not "alleged with sufficient particularity. Even if [the Court] were to find that the time and content of those communications met the Rule 9(b) standard, Plaintiffs' claim must be dismissed because they failed to allege how those statements were fraudulent." Anatian v. Coutts Bank (Switzerland) Ltd., 193 F.3d 85, 88 (2d Cir.1999). Therefore, Komin's Motion to dismiss Plaintiffs' 18 U.S.C § 1962(c) claim is granted.

### B. The 18 U.S.C. § 1962(d) Claim

The United States Court of Appeals for the Second Circuit has held that where Plaintiffs did not adequately allege a substantive violation of RICO, it is proper for a district court to dismiss a RICO conspiracy alleged in violation of 18 U.S.C. § 1962(d). First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 164 (2d Cir. 2004). Therefore, because Plaintiffs' substantive RICO claim fails, Plaintiffs' RICO

P-049

conspiracy claim must fail as well.[3] Komin's Motion to dismiss Plaintiffs' 18 U.S.C. § 1962(d) claim is granted.

## II.     The State Claims

The rule is clear that " 'if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.' " Castellano v. Bd. of Trustees of Police Officers' Variable Supplements Fund, 937 F.2d 752, 758 (2d Cir.1991) (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)). Because Plaintiffs' federal claims have been dismissed pursuant to Rule 12(b)(6), this Court will decline to exercise supplemental jurisdiction over Plaintiffs' remaining State Claims with respect to Komin.

---

[3]Even if the underlying RICO claim had been pleaded successfully, for the purposes of the RICO conspiracy claim, "the complaint must allege some factual basis for a finding of a conscious agreement among the defendants." Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 26 n.4 (2d Cir. 1990). In the instant case, Plaintiffs only generally allege that the Defendants "willfully combined, conspired and agreed to violate 18 U.S.C. [§] 1962(c)," and that "[e]ach defendant knew of and agreed to and acted in furtherance of the overall objective of the conspiracy by facilitating the supply of false information." (Compl. ¶¶ 41,42.) There is no allegation of a factual basis by which an agreement was created between Komin and the other Defendants. Additionally, there is no allegation that Komin specifically did anything either to further a fraudulent scheme or to facilitate a fraudulent scheme. Finally, there are no allegations as to Komin's general role in the supposed conspiracy. While Komin need not have personally participated in the commission or attempted commission of any predicate acts, see Salinas v. United States, 522 U.S. 52, 66 (1997) (upholding a conviction for RICO conspiracy where the defendant did not personally commit the predicate racketeering acts but instead knew about and otherwise facilitated the racketeering scheme), the complaint must at least include some factually based allegation that Komin knew about and agreed to facilitate an alleged scheme. Conclusory statements such as "[e]ach Defendant knew of and agreed to and acted in furtherance of the overall objective of the conspiracy by facilitating the supply of false information," Compl. ¶ 42, are insufficient to maintain a claim under 18 U.S.C. § 1962(d).

11

P-049

## CONCLUSION

For the reasons stated herein, Komin's Motion to dismiss is hereby GRANTED.

SO ORDERED.

Dated: August 24, 2006  
Brooklyn, New York

/s/ Hon. sterling Johnson, Jr.  
_____  
Senior U.S.D.J.