UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------X
BORIS KUCHER, ALME MANAGEMENT, INC., and
BMK CONSULTING,

                           Plaintiffs,

   -against-

ALTERNATIVE TREATMENT CENTER OF PATERSON,     **REPORT &**
LLC, ALTERNATIVE TREATMENT CENTER OF                 **RECOMMENDATION**
NEWARK, LLC, BUSINESS SUPPORT SOLUTIONS,        05-CV-3733 (SJ) (JMA)
BASIC FOUNDATION, NATAN POLISHUK, EFREM
MILNER, ALEKSANDR AIZEN, WALTER SHECHTER,
and BARGAIN ISLAND CHECK CASHING,

                           Defendants.
------------------------------------------------------------------------------X

A P P E A R A N C E S:

Joseph P. Garland
Lifshutz & Lifshutz, P.C.
501 Fifth Avenue, Suite 506
New York, NY 10017
212-949-8484
    *Attorney for Plaintiffs*


**AZRACK**, **J., United States Magistrate Judge:**

      In this action, plaintiffs allege that the various corporate and individual defendants engaged in a common scheme to defraud plaintiffs in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and 1962(d), as well as the common law against fraud and unjust enrichment. Defendants Walter Shechter, Aleksandr Aizen and the corporate defendants have not appeared in the action and the Honorable Sterling Johnson, the presiding District Judge, referred plaintiffs' motion for default judgment to me for report and

1

recommendation. For the reasons discussed below, I respectfully recommend that the Court deny plaintiffs' motion for default judgment and sua sponte dismiss the complaint for failure to timely serve the amended complaint pursuant to Federal Rule of Civil Procedure 4(m).

## I. FACTS

Plaintiff Boris Kucher ("Kucher") is president of plaintiff BMK Consulting ("BMK"). Aleksandr Falikman ("Falikman") is president of plaintiff Alme Management ("Alme"). In late May 2004, Walter Shechter ("Shechter"), Kucher's cousin, contacted Falikman and Kucher regarding an opportunity to invest in HIV/AIDS treatments centers owned and operated by a man named Natan Polishuk. (Compl. ¶ 21.) Shechter told Falikman and Kucher that Polishuk was "an honest guy" and "a great partner and businessman" and that they could easily earn upwards of $500,000 a year by investing with him. (Compl. ¶¶ 21–22.) Kucher and Falikman contacted Polishuk to discuss the opportunity. Polishuk told plaintiffs about two treatment centers he operated in New Jersey, Alternative Treatment Center of Patterson, L.L.C. ("ATC Patterson") and Alternative Treatment Center of Newark, L.L.C. ("ATC Newark"). (Compl. ¶ 23.) In June of 2004, Polishuk and Efrem Milner ("Milner"), who owned a twenty-five percent interest in each center, gave Falikman a tour of ATC Patterson and ATC Newark. During the tours, Falikman observed a "nice-looking, operating business" with workers dressed in medical scrubs, patients, and medical equipment and saw a database of purported patients. (Compl. ¶¶ 24–27.)

Over the course of the next few weeks, Shechter, Polishuk, and Milner continued to solicit plaintiffs' investment. They told plaintiffs that both treatment centers were authorized to engage in the business of testing for and treating HIV and AIDS and that both conducted a large volume of business. (Compl. ¶ 29; 34.) The defendants further asserted that the treatment centers were more profitable than other similar businesses because two of Polishuk's other

2

companies, Business Support Solutions ("BSS") and Basic Foundation ("Basic"), had an exclusive agreement with a drug distributor that enabled them to purchase medications at below-market prices. (Compl. ¶ 33.) Polishuk, Milner, and Shechter assured plaintiffs that they "would get their investment back in as little as six months to one year" and that all of their other investors were very satisfied. Polishuk also claimed that he would return plaintiffs' investment if the centers proved unsuccessful. (Compl. ¶ 29–34; 45.)

Based on defendants' representations about the profitability of the treatment centers, plaintiffs agreed to make what they believed was an investment of $300,000 in ATC Newark. On July 12, 2004, plaintiffs gave Milner $150,000 in checks for his 25% interest in ATC Newark. Plaintiffs gave approximately $150,000 in additional cash and checks to Polishuk, which he claimed he would use as working capital for the centers. (Compl. ¶ 39, 47.) However, plaintiffs soon learned that, contrary to defendants' representations, ATC Newark "was, in fact, hardly functional, as it went long periods of time without any doctors working there and saw perhaps 5-10 patients a day when doctors were available." (Compl. ¶ 35.) Plaintiffs also learned that ATC Newark was not paying its rent. (Compl. ¶ 37.) The complaint further alleges that, after receiving funds from the plaintiffs and unidentified "other potential investors," Polishuk cashed plaintiffs' checks at defendant Bargain Island Check Cashing ("Bargain Island") and absconded with the funds.

According to the complaint, Polishuk kept plaintiffs and other investors at bay by issuing "bad checks representing the return of money to the investors, knowing there were insufficient funds in the bank accounts of the treatment centers to pay them." (Compl. ¶ 49.) The defendants then "shut down the treatment centers and opened others to continue the scheme in order to enable previous investors such as [d]efendant Shechter to get their money back." (Compl. ¶ 48,

50.) "In what turned out to be a classic pyramid scheme, the [defendants] then promised the [p]laintiffs and other investors a return on their investment if they introduced the [defendants] to new prospective investors and assisted in the sales of their purported business interests." (Compl. ¶ 51.) Plaintiffs allege that defendants took their money without conveying an ownership interest or investment gain to plaintiffs and that plaintiffs received nothing in return for the $300,000 they gave to Polishuk and Milner.[1]

## II. PROCEDURAL HISTORY

Because this action is nearly four years old, involves numerous defendants acting individually rather than collectively, and has had defendants appearing and disappearing at various points throughout its pendency, the procedural history is long and convoluted. Only the events relevant to the instant motion will be recounted here.

Plaintiffs commenced this action by filing a complaint on August 5, 2005. (Dkt. No. 1: Compl., Aug. 5, 2005 ("Original Complaint").) Plaintiffs served the Original Complaint on the various defendants between August and November 2005. (Dkt. No. 4–8; 24–26.) None of the current defendants answered or otherwise appeared and on March 15, 2006, plaintiffs moved for default judgment.[2] (Dkt. No. 27: First Mot. for Default J., Mar. 15, 2006 ("March 2006 Motion for Default").) On April 4, 2007, Judge Johnson referred the motion for default judgment to me for report and recommendation. (Dkt. No. 46.) Approximately two months later on May 29, 2007, while their March 2006 Motion for Default was still pending, plaintiffs filed an amended complaint against each of the defaulting defendants. (Dkt. No. 50: First Amended Compl.

---

[1] Polishuk and Milner were both named as defendants at the commencement of the action. Plaintiffs withdrew their claims against Polishuk after his death in January of 2007. (Dkt. No. 55.) Milner initially defaulted but eventually appeared and moved for summary judgment. Judge Johnson granted summary judgment and dismissed Milner from the case on November 7, 2008. (Dkt. No. 107.)

[2] One of the original defendants, Nikolay Komin, did timely appear but was dismissed from the action on August 29, 2006 after successfully moving to dismiss based on the Original Complaint's failure to state a claim. (Dkt. No. 30.)

("Amended Complaint").) That same day, plaintiffs filed another motion for default judgment based on the Amended Complaint. (Dkt. No. 51: First Mot. for Entry of J. Under R. 54(b), May 29, 2007 ("May 2007 Motion for Default").)

Judge Johnson referred the May 2007 Motion for Default to me for report and recommendation on June 1, 2007. (Dkt. No. 52.) Two weeks later, defendant Milner appeared[3] and moved for summary judgment on the Amended Complaint.[4] (Dkt. No. 53; 77; 95–104.) On November 7, 2008, Judge Johnson granted defendant Milner's motion for summary judgment and dismissed him from the case.[5] Though the defendants were subject to joint and several liability, Judge Johnson's ruling was dispositive as to Milner only. Therefore, now before the Court is plaintiffs' May 2007 Motion for Default against the remaining defendants, namely Shechter, Aizen and the corporate defendants.

### III. **DISCUSSION**

The Federal Rules of Civil Procedure authorize the Court to enter default judgment against any party that fails to answer or otherwise defend within twenty days after being served with the summons and complaint. Fed. R. Civ. P. 55(b)(2); 12(a). A plaintiff has 120 days after filing the complaint within which to serve the defendant. Fed. R. Civ. P. 4(m). If the plaintiff fails to serve within that time, "the court—on motion or on its own after notice to the plaintiff— must dismiss the action without prejudice against that defendant or order that service be made

---

[3] In light of Milner's appearance and motion, I held my report and recommendation on plaintiffs' motion for default judgment in abeyance to avoid the possibility of inconsistent judgments. See Harvey v. Home Savers Consulting Corp., No. 07-CV-2645, 2008 WL 724152, at *1 (E.D.N.Y., Mar. 17, 2008) (citing Frow v. De La Vega, 15 Wall. 552, 82 U.S. 552, 21 L.Ed. 60 (1872)).

[4] There is no evidence that Milner was served with the Amended Complaint but he referred to and attached the Amended Complaint as an exhibit to his motion for summary judgment. (Dkt. No. 95–96.)

[5] Judge Johnson ruled that the Amended Complaint failed to state a RICO violation against Milner under the operation and management test and declined to exercise jurisdiction over the state law fraud claims. (Dkt. No. 107: Order Granting Mot. For J as a Matter of Law.)

5

within a specified time." Id. If the plaintiff shows good cause for the failure to serve, the court must extend plaintiff's time to serve. Id.

Here, plaintiffs filed the Amended Complaint on May 29, 2007. However, there is no proof of service upon Shechter, Aizen and the corporate defendants[6] and no indication that these defendants had actual notice of the Amended Complaint. Indeed, plaintiffs filed their May 2007 Motion for Default on the same day that they filed the Amended Complaint and the motion cites service dates and attaches proofs of service that correspond to service of the Original rather than Amended complaint. See generally May 2007 Motion for Default. Thus, plaintiffs seem to concede lack of service.

Proper service of the Original Complaint does not excuse failure to serve the Amended Complaint. It is well established that an amended complaint supersedes the original, and renders it of no legal effect. See Dluhos v. Floating & Abandoned Vessel, Known as "New York", 162 F.3d 63, 68 (2d Cir. 1998) (internal quotation marks and citations omitted). By filing the Amended Complaint, plaintiffs mooted the Original Complaint and its associated March 2006 Motion for Default. See Miller v. Am. Export Lines, Inc., 313 F.2d 218, 218 (2d Cir. 1963) (per curiam) (filing of amended complaint after defendant had moved for summary judgment served to remove original complaint from court's consideration). Defendants then became entitled "to raise substantive arguments . . . in a new responsive pleading, even if those arguments were not raised in response to the original complaint." In re Parmalat Sec. Litig., 421 F. Supp. 2d 703, 713 (S.D.N.Y. 2006) (internal quotation marks and citations omitted). Since defendants were never served with the Amended Complaint, they have been denied their right to respond to it.

---

[6] The Court contacted plaintiffs' attorney after noticing that proofs of service for the Amended Complaint were missing from the electronic docket. After one week of searching his files, plaintiffs' attorney confirmed to the Court via telephone call to Chambers on March 23, 2009, that plaintiffs do not have any proof that defendants were served with the Amended Complaint.

6

That the two complaints raise identical causes of action based on the same alleged fraudulent scheme also does not cure plaintiffs' failure to serve because the complaints are substantively distinct. As Judge Johnson observed in a prior order dismissing one of the answering defendants, the Original Complaint falls woefully short of the heightened pleading requirements for fraud under Federal Rule of Civil Procedure 9(b). See Kucher v. Alternative Treatment Center of Paterson, L.L.C. et. al., No. 05-CV-3733, 2006 WL 2527851, at *3–4 (E.D.N.Y. Aug. 29, 2006). Plaintiffs filed the Amended Complaint in an attempt to cure the deficiency and salvage their litigation against the defaulters. Thus, the Amended Complaint, which is twice as long as the Original, includes several material facts and details omitted from the first. It would be improper to enter default judgment on the Amended Complaint, which defendants have no notice of, based on what may have been a tactical decision to ignore the poorly pled Original Complaint.

Without service, defendants' Rule 12(a) obligations to answer the Amended Complaint were never triggered and the Court has no authority to enter default judgment against Shechter, Aizen and the corporate defendants. I respectfully submit that the Court must therefore deny plaintiffs' May 2007 Motion for Default. However, under the Federal Rules of Civil Procedure, the Court is further required to either dismiss the Amended Complaint, unless good cause can be shown, or extend plaintiffs' time to serve. Fed. R. Civ. P. 4(m). While the Court may grant an extension of time to serve in the absence of good cause, it is not required to do so. See Zapata v. City of New York, 502 F.3d 192, 197 (2d Cir. 2007). Generally, the Court of Appeals will not disturb a district court's decision to dismiss rather than extend the time to serve where there is not even a colorable excuse for plaintiff's neglect to serve. Id. at 198 n.7 (citing Bogle-Assegai v. Connecticut, 470 F.3d 498, 509 (2d Cir. 2006)).

The circumstances of this case warrant a dismissal rather than an extension of time. Nearly two years have passed since plaintiffs amended the complaint yet they have not attempted to serve either the Amended Complaint or the May 2007 Motion for Default, nor have they requested an extension of time to serve. Nothing in the record indicates that service would have been difficult or complicated in case, especially since plaintiffs successfully served the Original Complaint. Additionally, there is no evidence that defendants had actual notice of the Amended Complaint. Thus, there is no "colorable excuse for neglect", let alone good cause, for plaintiffs' failure to serve. Id. at 198; see also AIG Managed Market Neutral Fund v. Askin Capital Mgmt., L.P., 197 F.R.D. 104, 108 (S.D.N.Y. 2000) ("A delay in service resulting from the mere inadvertence, neglect, or mistake of a litigant's attorney does not constitute good cause.")

Moreover, dismissal without prejudice would not impose an undue hardship upon plaintiffs. The six-year statute of limitations applicable to plaintiffs' fraud claim, N.Y. C.P.L.R. § 213, has not yet expired as the events giving rise to the claim occurred in 2004. Thus, plaintiffs are free to file that claim in a new action. While plaintiffs would be time-barred from re-filing their RICO claims[7], an extension of time to serve would nevertheless be futile because the Amended Complaint fails to adequately plead any RICO violations. Plaintiffs cannot pursue RICO claims against ATC Newark and ATC Patterson because they allege that these defendants are part of the racketeering enterprise. Corporate entities cannot be both defendants who conduct the affairs of the enterprises and the enterprises themselves. See Anatian v. Coutts Bank (Switzerland) Ltd., 193 F.3d 85, 88–89 (2d Cir. 1999); Lukaszuk v. Sudeen, No. 02-CV-5143,

---

[7] Civil RICO actions are subject to a four-year statute of limitations that begins to run when the plaintiff discovers or should discover the RICO injury. In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56, 58. In the event of a dismissal without prejudice, the limitations period in this case would be considered to have expired in 2008 since such a dismissal negates the tolling effected by the commencement of the action. See Cardio-Medical Assoc., Ltd. v. Crozer-Chester Med. Ctr., 721 F.2d 68, 77 (3d Cir. 1983) ("It is a well recognized principle that a statute of limitations is not tolled by the filing of a complaint subsequently dismissed without prejudice. As regards the statutes of limitations, the original complaint is treated as if it never existed.")

2007 WL 4699018, at *4 (E.D.N.Y. 2007); Feirstein v. Nanbar Realty Corp., 963 F. Supp. 254, 257–58 (S.D.N.Y. 1997). The complaint fails to state a § 1962(c) violation with respect to the remaining defendants, Shechter, Aizen, BSS, Basic and Bargain Island because their participation in the scheme, as alleged in the Amended Complaint, fails to rise to the level necessary to trigger liability under § 1962(c).[8]

To plead participation in a RICO enterprise, the plaintiff must allege that the defendant did something "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs . . . ." 18 U.S.C. § 1962(c). This requires proof that the defendant had "some part in directing the enterprise's affairs." Reves v. Ernst & Young, 507 U.S. 170, 179 (1993) (emphasis in original). Regarding Shechter, the Amended Complaint alleges only that he owned shares in one of the treatment centers and that he introduced plaintiffs to the scheme. The complaint alleges that Aizen is a managing member of one of the treatment centers. However, it fails to identify what role, if any, he actually played in the pyramid scheme or how his status on paper as a "manager" translated into any actual authority over the scheme.

The complaint alleges that BSS and Basic facilitated the scheme by purporting to supply the treatment centers with low-cost pharmaceuticals and that Bargain Island facilitated the scheme by wrongfully cashing checks. However, "[s]imply alleging that certain entities provide services which are helpful to an enterprise without any allegations that those entities exert any control over the enterprise does not sufficiently allege a claim under RICO against those entities." City of New York v. Smokes-Spirits.Com, Inc., 541 F.3d 425, 449 (2d Cir. 2008) (holding that a company that provided essential website services to a RICO enterprise with the

---

[8] This finding echoes the District Court's reasons for dismissing Milner from the action on summary judgment. See Dkt. No. 107: Mem. & Order Granting J. as a Matter of Law at 7–8.

9

knowledge that the enterprise was using the services to defraud the plaintiff through racketeering activity was not liable for a RICO violation under the operation and management test).

Finally, plaintiffs' RICO conspiracy claim fails on the pleading as well as "[a]ny claim under [§] 1962(d) based on a conspiracy to violate the other subsections of [§] 1962 necessarily must fail if the substantive claims are themselves deficient." Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1191 (2d Cir. 1993); see also Knoll v. Schectman, 275 Fed. Appx. 50, 51 (2d Cir. 2008) (dismissing the complaint's single claim of a § 1962(d) RICO conspiracy where plaintiff failed to adequately plead a substantive RICO violation under the heightened pleading standard of Federal Rule of Civil Procedure 9(b)).[9]

In light of the fact that there is no excuse for plaintiffs' failure to serve the Amended Complaint and the fact that a dismissal of the complaint will not result in undue prejudice for the reasons stated above, I respectfully recommend that the Court dismiss the Amended Complaint without prejudice.

---

[9] As discussed above, the plaintiffs failed to adequately plead substantive RICO violations against Shechter, Aizen and the corporate defendants and, on a prior motion, Judge Johnson determined that Milner did not commit a substantive RICO violation either. This leaves Polishuk as the sole potential RICO violator. However, the complaint fails to adequately plead the predicate acts necessary to establish a RICO violation against him. The complaint alleges predicate acts of wire fraud, bank fraud, money laundering, and larceny. The complaint fails to plead wire fraud with the required particularity under Federal Rule of Civil Procedure 9(b) because it fails to identify even a single date on which Polishuk made a phone call, sent a fax or email, or otherwise used a wire. See Mills v. Polar Molecular Corp., 12 F.3d 1170, 1176 (2d Cir. 1993) ("[A]llegations of predicate mail and wire fraud acts should state the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent"). The bank fraud allegation fails because the facts do not allege an intent to defraud a financial institution. See U.S. v. Matt, 116 F.3d 971, 974 (2d Cir. 1997). The money laundering allegation is deficient in that it is unsupported by any facts establishing an intent to conceal the source of the illegally obtained funds. See Bernstein v. Misk, 948 F. Supp. 228, 236 n.2 (E.D.N.Y. 1997) (plaintiff must plead all essential elements of money laundering, including that defendant's purpose was to conceal source of illegally obtained funds). Finally, the larceny allegation is insufficient because larceny does not constitute a predicate act for purposes of civil RICO liability. See Wood v. Incorporated Village of Patchogue of New York, 311 F. Supp. 2d 344, 358 (E.D.N.Y. 2004).

## IV. CONCLUSION

Since defendants have not been served in the nearly two years that have passed since plaintiffs filed their amended complaint, I respectfully recommend that the Court deny plaintiffs' motion for default judgment in its entirety. I further recommend that, pursuant to Rule 4(m), the Court sua sponte dismiss the complaint without prejudice unless plaintiffs establish good cause for failure to serve.[10]

## NOTICE

Plaintiffs are hereby ordered to serve a copy of this report and recommendation on defendants and to promptly file proof of service by ECF. Any objections to this report and recommendation must be filed electronically with the Clerk of the Court, within ten (10) days of the date of entry of this report and recommendation. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

SO ORDERED.

Dated: March 27, 2009
Brooklyn, New York

/s/
JOAN M. AZRACK
UNITED STATES MAGISTRATE JUDGE

---

[10] Rule 4(m) directs the Court to notify a plaintiff before sua sponte dismissing a complaint for failure to timely serve. As the final decision to dismiss lies with the District Court and as plaintiffs are entitled to object to this recommendation, this report shall serve as plaintiffs' notice of potential dismissal for failure to timely serve.